J-S28045-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN RE:  Z.A.S., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF:  K.E.S., MOTHER | No. 3222 EDA 2015 |

Appeal from the Decree September 22, 2015
in the Court of Common Pleas of Bucks County
Orphans' Court at No.: 2015-9065-36

BEFORE:  BOWES, J., LAZARUS, J., and PLATT, J.[*]

MEMORANDUM BY PLATT, J.:                    **FILED MAY 20, 2016**

In these related cases, D.T. (Father) and K.E.S. (Mother), each appeal from the decrees, entered in the Court of Common Pleas of Bucks County on September 22, 2015, independently terminating their parental rights to their son, Z.A.S. (Child), born in April of 2007.  Both parties' counsel have filed ***Anders*** briefs,[1] and petitions to withdraw from further representation.  We affirm the involuntary termination of both parents' parental rights on the

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] ***See Anders v. California***, 386 U.S. 738 (1967).

basis of the trial court's opinions, and we grant counsel's petitions to withdraw from further representation.[2]

Preliminarily, we observe that the trial court properly relates the facts and procedural history of these cases in its two separate opinions entered on December 4, 2015.[3] Therefore, we need not repeat the details of this history here.

For the convenience of the reader we note briefly that both parents originally lived in Maine. Father continues to live there, in an assisted living facility. He is disabled and receives social security disability payments.[4] Father claims the benefit of a relatively small trust fund, but was vague about details and could not obtain funds to travel to Bucks County for the hearing. In any event there is some question whether he was medically fit to travel.

Mother apparently took Child from Maine without Father's knowledge or permission. Father's recent contact with Child has been limited and

---

[2] In the interest of judicial economy, we address both appeals in one memorandum which will be entered as our decision in each of these appeals.

[3] We refer the reader to those opinions for a more detailed recitation of the facts of these cases.

[4] Father reportedly suffers from a history of rheumatoid arthritis, stroke, diabetes, high blood pressure, and hepatitis C. He has had osteomyelitis, and had toes amputated, which led to infections, and the administration of antibiotics which adversely affected his liver. (**See** N.T. Hearing, 9/18/15, at 26-27, 45-46, 49).

sporadic. Until 2014 Child apparently did not know Father was his biological father. He thought his father was one of Mother's other paramours. Father admitted he was not currently able to care for himself, or for Child. (**See** N.T. Hearing, 9/18/15, at 56).

Mother has a long history of substance abuse, including heroin. When Child was born he tested positive for opiates and cocaine. (**See id.** at 10-11). Mother has endured episodes of homelessness. She was admitted to a shelter but was evicted for drug use. She obtained Section 8 housing in Bucks County, but lost it for failure to pay rent. She had reportedly been living with a boyfriend, but her current whereabouts are unknown. Mother has three active bench warrants outstanding.

In the summer of 2013, Mother moved to Pennsylvania with a boyfriend and with Child. Mother has long suffered from mental health issues, for which she has failed to obtain continuing treatment or medication. Child was removed from Mother's custody and care on reports she was abusing heroin, and neglecting Child. She twice refused to take a drug test. Child was subsequently declared dependent. He has been living with his foster parents since March, 2014.

The trial court held hearings in this matter on September 18 and September 22, 2015. Mother failed to attend either hearing. Father participated in the September 18 hearing by telephone. At the September 18 hearing, the court heard the testimony of Bucks County Children and

Youth Social Services Agency (BCCYS) caseworker, Brenda Bunting, and of Father.[5]

The trial court entered its decrees terminating Mother's and Father's parental rights pursuant to 23 Pa.C.S.A. §§ 2511(a)(2), (5), (8) and (b) on September 22, 2015. Mother, through counsel, filed a notice of appeal and statement pursuant to Pa.R.A.P. 1925(c)(4) on October 14, 2015. Father, through his counsel, filed a notice of appeal and statement pursuant to Pa.R.A.P. 1925(c)(4) on October 22, 2015.[6]

Counsel raises the following question on appeal on behalf of Mother:

> 1. Did the trial court commit an error of law and abuse of discretion by involuntarily terminating [Mother's] parental rights?

(Mother's Brief, at 2).

Father's counsel presented the following questions for our review:

_____

[5] Mother failed to appear at the hearing on September 18, 2015, even though a BCCYS caseworker personally served her with notice of the hearing and after BCCYS confirmed with Mother's attorney, one day before the hearing, that Mother was aware of the hearing. To accommodate Mother, the trial court scheduled an additional hearing for September 22, 2015. (*See* Trial Court Opinion [in Mother's case], 12/04/15, at 7-8). The trial court entered the decrees at issue after Mother failed to appear on September 22.

[6] *See In re J.T.*, 983 A.2d 771, 774 (Pa. Super. 2009) (holding that decision of counsel to follow Pa.R.A.P. 1925(c)(4) procedure in a termination of parental rights case was proper).

- 4 -

A. Should [Father's] counsel be permitted to withdraw his appearance because the appeal is wholly frivolous?

B. Was the termination of the [Father's] parental rights premature in light of his disability and consequent inability to maintain contact with [Child]?

(Father's Brief, at 3).

Our standard of review is well-settled:

In an appeal from an order terminating parental rights, our scope of review is comprehensive: we consider all the evidence presented as well as the trial court's factual findings and legal conclusions. However, our standard of review is narrow: we will reverse the trial court's order only if we conclude that the trial court abused its discretion, made an error of law, or lacked competent evidence to support its findings. The trial judge's decision is entitled to the same deference as a jury verdict.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citations omitted).

Further, we have stated:

Where the hearing court's findings are supported by competent evidence of record, we must affirm the hearing court even though the record could support an opposite result.

We are bound by the findings of the trial court which have adequate support in the record so long as the findings do not evidence capricious disregard for competent and credible evidence. The trial court is free to believe all, part, or none of the evidence presented, and is likewise free to make all credibility determinations and resolve conflicts in the evidence. Though we are not bound by the trial court's inferences and deductions, we may reject its conclusions only if they involve errors of law or are clearly unreasonable in light of the trial court's sustainable findings.

*In re M.G.*, 855 A.2d 68, 73-74 (Pa. Super. 2004) (citations omitted).

- 5 -

Here, the trial court terminated Mother's and Father's parental rights pursuant to 23 Pa.C.S.A. §§ 2511(a)(2), (5), (8), and (b). In order to affirm the termination of parental rights, this Court need only agree with any one subsection of Section 2511(a). *See In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*), *appeal denied*, 863 A.2d 1141 (Pa. 2004).

Requests to have a natural parent's parental rights terminated are governed by 23 Pa.C.S.A. § 2511, which provides, in pertinent part:

**§ 2511. Grounds for involuntary termination**

**(a) General rule.**—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

\* \* \*

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

\* \* \*

**(b) Other considerations.**—The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(2), (b).

A party seeking termination of a parent's rights bears the burden of proving the grounds to so do by "clear and convincing evidence," a standard which requires evidence that is "so clear, direct, weighty, and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." *In re T.F.*, 847 A.2d 738, 742 (Pa. Super. 2004) (citations omitted). Further,

> A parent must utilize all available resources to preserve the parental relationship, and must exercise reasonable firmness in resisting obstacles placed in the path of maintaining the parent-child relationship. Parental rights are not preserved by waiting for a more suitable or convenient time to perform one's parental responsibilities while others provide the child with his or her physical and emotional needs.

*In the Interest of K.Z.S.*, 946 A.2d 753, 759 (Pa. Super. 2008) (citations omitted).

The fundamental test in termination of parental rights under Section 2511(a)(2) was long ago stated in the case of *In re Geiger*, 459 Pa. 636, 331 A.2d 172 (1975). There the Pennsylvania Supreme Court announced that under what is now Section 2511(a)(2), the petitioner for involuntary termination must prove:

> [t]he repeated and continued incapacity, abuse, neglect, or refusal of the parent has caused the child to be without essential parental care, control, or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect, or refusal cannot or will not be remedied by the parent.

*Id.* at 173.

The Adoption Act provides that a trial court "shall give primary consideration to the developmental, physical and emotional needs and welfare of the child." 23 Pa.C.S.A. § 2511(b). The Act does not make specific reference to an evaluation of the bond between parent and child but our case law requires the evaluation of any such bond. **See In re E.M.**, 620 A.2d 481, 485 (Pa. 1993). However, this Court has held that the trial court is not required by statute or precedent to order a formal bonding evaluation performed by an expert. **See In re K.K.R.-S**., 958 A.2d 529, 533 (Pa. Super. 2008).

Before we begin our analysis, we must dispose of the applications to withdraw as counsel filed by the attorneys representing both Mother and Father.

Both counsel have filed a petition with this Court to withdraw from representation pursuant to **Anders v. California**, 386 U.S. 738 (1967) and **Commonwealth v. Santiago**, 978 A.2d 349 (Pa. 2009).

Pursuant to **Anders**, when counsel believes an appeal is frivolous and wishes to withdraw representation, he or she must do the following:

> (1) petition the court for leave to withdraw stating that after making a conscientious examination of the record . . ., counsel has determined the appeal would be frivolous;
>
> (2) file a brief referring to anything that might arguably support the appeal, but which does not resemble a "no-merit" letter or *amicus curiae* brief; and

> (3) furnish a copy of the brief to defendant and advise him of his right to retain new counsel, proceed **pro se,** or raise any additional points he deems worthy of the court's attention.

**In re S.M.B.**, 856 A.2d 1235, 1237 (Pa. Super. 2004) (citation omitted) (emphasis in original).

In **In re V.E.**, 611 A.2d 1267, 1274-75 (Pa. Super. 1992), this Court extended the **Anders** principles to appeals involving the termination of parental rights. "When considering an **Anders** brief, this Court may not review the merits of the underlying issues until we address counsel's request to withdraw." **In re S.M.B.**, **supra** at 1237.

In **Commonwealth v. Santiago**, 978 A.2d 349 (Pa. 2009), our Supreme Court addressed the second requirement of **Anders**, *i.e.*, the contents of an **Anders** brief, and required that the brief:

> (1) provide a summary of the procedural history and facts, with citations to the record;
>
> (2) refer to anything in the record that counsel believes arguably supports the appeal;
>
> (3) set forth counsel's conclusion that the appeal is frivolous; and
>
> (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

**Santiago**, **supra** at 361. "After an appellate court receives an **Anders** brief and is satisfied that counsel has complied with the aforementioned requirements, the Court then must undertake an independent examination

of the record to determine whether the appeal is wholly frivolous." ***In re S.M.B.***, ***supra*** at 1237.

With respect to the third requirement of ***Anders***, that counsel inform the defendant of his or her rights in light of counsel's withdrawal, this Court has held that counsel must "attach to their petition to withdraw a copy of the letter sent to their client advising him or her of their rights." ***Commonwealth v. Millisock***, 873 A.2d 748, 752 (Pa. Super. 2005).

Here both attorneys have stated in their petitions that they have made a conscientious review of the record, concluded that their client's appeal is wholly frivolous, and stated the reasons for their conclusion. In addition, each has timely mailed their respective client: (1) a copy of their petition to withdraw; (2) a copy of their ***Anders*** brief; and (3) letters advising their clients of their rights to proceed *pro se* or to retain private counsel if the petition is granted and to raise any additional issues that they deem worthy of consideration.[7] Each counsel has filed the required ***Anders*** brief in this Court setting forth the issues they believe might arguably support their client's appeal. Thus, we conclude that counsel for both Mother and Father have substantially satisfied the procedural requirements of ***Anders*** and we will grant them leave to withdraw as counsel.

---

[7] Neither party responded.

We have thoroughly reviewed the record, briefs, and the applicable law, and determined that the evidence presented is sufficient to support the trial court's decrees terminating Mother's and Father's parental rights pursuant to 23 Pa.C.S.A. §§ 2511(a)(2) and (b).

Our analysis of the trial court's opinions confirms that the trial court carefully and methodically reviewed the evidence and ably addressed both Mother's and Father's issues presented on appeal. Accordingly, we will affirm both dispositions based on the concise, thoughtful, and well-written opinions of the Honorable Gary B. Gilman, entered in each case on December 4, 2015. Specifically, as to Mother, the trial court concluded that she had failed to pursue the avenues open to her for assistance, and clear and convincing evidence confirmed that Child's needs and welfare would be better served by termination of Mother's parental rights. (**See** Trial Ct. Op. [in Mother's case], at 10-11). As to Father, the trial court concluded that termination was warranted where the record confirmed by clear and convincing evidence that Father has not been, and continues not to be, capable of adequately parenting Child; Child's needs and welfare, including the need for permanence and stability, would be better served by the involuntary termination of Father's parental rights. (**See** Trial Court Opinion [in Father's case], 12/04/15, at 11).

Accordingly, we affirm the trial court's decrees, entered September 22, 2015, terminating Mother's and Father's parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(2) and (b).

Decrees affirmed. Petitions to withdraw as counsel granted.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/20/2016

ROW/OC SCANNED DEC 4 2015

IN THE COURT OF COMMON PLEAS OF BUCKS COUNTY, PENNSYLVANIA
ORPHANS' COURT DIVISION

IN RE: Z.S.

NO.: 2015-A9065

INVOLUNTARY TERMINATION
OF PARENTAL RIGHTS OF K.S.

## OPINION

### I.    INTRODUCTION

K.S. (hereinafter "Appellant" or "Mother") is the natural mother of Z.S. (hereinafter "Child"). Mother has appealed to the Superior Court our September 22, 2015 Decree granting the Petition filed by the Bucks County Children and Youth Social Services Agency (hereinafter referred to as the "Agency") to Involuntarily Terminate her Parental Rights.[1] Evidentiary hearings, wherein the factual predicate was established for our decision, were conducted on September 18, 2015, and September 22, 2015.

### II.    BACKGROUND

The relevant facts and procedural history of this case are as follows: Z.S. was born to Mother on April 18, 2007. The first time Child was removed from Mother's care was in April 2009. Thereafter, Child was in the care of various other individuals and returned to Mother's care on August 2, 2012. On April 3, 2014, Child was adjudicated dependent and the temporary legal and physical custody of the Agency was established. On June 22, 2015, the Agency filed Petitions to Terminate Parental Rights as to Mother and Father under 23 Pa. C.S. §2511(a) (2), (5), and (8).

### III.    APPELLANT'S STATEMENT OF ERRORS COMPLAINED OF ON APPEAL

Appellant filed a Notice of Appeal on October 13, 2015. At the same time, pursuant to Pa.R.A.P. 1925(c)(4) and In re J.T., 983 A.2d 771 (Pa. Super. 2009), counsel for Mother informed

---

[1] Father has also appealed our Decree of September 22, 2015 which terminated his parental rights as to Z.S.. Father's appeal is addressed in a separate Opinion.

ROW/OC SCANNED DEC 4 2015

this Court of her intent to file an appellate brief pursuant to <u>Anders v. California</u>, 386 U.S. 738 (1967). Counsel filed that Statement, which in essence admits that Mother's appeal lacks merit, in lieu of a Pa. R.A.P. 1925(b) statement of errors complained of on appeal.[2]

## IV. STANDARD OF REVIEW

In cases involving termination of parental rights and an appeal from a decree of the trial court, the standard of review employed by the appellate courts is limited to determining whether the decision of the trial court is supported by competent evidence, and whether the trial court gave adequate consideration to the effect of such a decree on the welfare of the child. As the finder of fact, the trial court is the sole determiner of the credibility of witnesses, and all conflicts in testimony are to be resolved by the finder of fact. Our findings are entitled to reasonable deference and absent an abuse of discretion, an error of law, or insufficient evidentiary support, the decree must stand. <u>In re Z.P</u>. 994 A.2d 1108, 1115-1116 (Pa. Super. 2010) (internal citation omitted).

Appellate courts employ a broad, comprehensive review of the record in order to determine whether a trial court's decision is supported by competent evidence, and will uphold a decision if any proper basis exists for the result reached. If the trial court's findings are supported by competent evidence, the appellate court must affirm the trial court's decision, even if the record could support an opposite result. *Id.,* <u>In re R.L.T.M.</u>, 860 A.2d 190, 191-192 (Pa. Super. 2004).

## V. DISCUSSION

Termination of parental rights is governed by Section 2511 of the Adoption Act, 23 Pa.C.S.A. §§ 2101–2938, which requires a bifurcated analysis, as follows:

> Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent

---

[2] Despite the lack of a 1925(b) Statement, we provide this Opinion as if Mother had complained that we erred as a matter of substantive law in granting the Agency's petition to terminate her parental rights.

2

OW/OC SCANNED DEC 4 2015

and child, with close attention paid to the effect on the child of permanently severing any such bond.

In re Adoption of C.D.R., 111 A.3d 1212, 1215 (Pa. Super. 2015) citing In re L.M., 923 A.2d 505, 511 (Pa. Super. 2007) (citations omitted).

Here the Agency pursued termination under §2511(a) (2), (5), and (8) which provide in pertinent part as follows:

(a)  General rule. – The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

> (2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

> (5) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal or placement of the child within a reasonable period of time and termination of the parental rights would best serve the needs and welfare of the child.

> (8) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.

As the party seeking termination, the Agency bore the burden of establishing by clear and convincing evidence that grounds existed for terminating Mother's parental rights. Clear and convincing evidence means testimony that is so clear, direct, weighty, and convincing as to enable the trier of fact to come to a clear conviction, without hesitation, of the truth of the precise facts in issue. In re Z.P. supra., at 1115-1116 (internal citations omitted).

"[T]he complete and irrevocable termination of parental rights is one of the most serious and severe steps a court can take, carrying with it great emotional impact for the parent and the child." In re C.P. 901 A.2d 516, 520 (Pa. Super. 2006). "Because of the importance placed on

3

OW/OC SCANNED DEC 4 2015

the family unit, governmental intrusion into the family, and disruption of the parent-child relationship, is warranted only in exceptional circumstances," and "only upon a showing of clear necessity." Even when such intrusion is necessary to protect the children, every possible effort must be made to reunite the family. In addition, all circumstances must be considered when analyzing a parent's performance or non-performance of parental obligations. A parent's performance must be measured in light of "what would be expected of an individual in circumstances which the parent under examination finds himself." In re Matsock, 611 A2.d 737, 742-743 (Pa. Super. 1992) (internal citations omitted).

In reaching a decision following a termination proceeding, the trial court's initial focus is on the conduct of the parent and whether his or her conduct justifies termination of parental rights pursuant to the pertinent statutory provisions. In re B.L.L. 787 A.2d 1007 (Pa. Super. 2001). Only if the statutory grounds for termination are established, pursuant to §2511(a), does the welfare of the child become the court's paramount consideration, and the court must reflect on whether termination will best serve the child, focusing on the developmental, physical, and emotional needs and welfare of the child.

Following two days of hearings in the present case, and considering all of the testimony and evidence presented, we determined that the Agency met its burden of demonstrating clear and convincing evidence to support the termination of Mother's parental rights.

The following pertinent facts were developed at the evidentiary hearings held in this matter on September 18, 2015 and September 22, 2015.

## A. Lack of a Stable Home for Child Prior to His Placement with the Agency

On September 18, 2015, we heard the testimony of Brenna Bunting, a foster care social worker for the Agency. Ms. Bunting testified that when Child was born in April, 2007, he tested positive for opiates and cocaine. (N.T. 9/18/15, pp. 10-11). Child was living with both parents in Bangor, Maine. (N.T. 9/18/15, pp. 10, 44). Ms. Bunting testified that in November 2007, Child

4

OW/OC SCANNED DEC 4 2015

was in a car with both parents when the car was pulled over. "Maine Children and Youth got involved and [Child] was removed at that point from [Father]. [3]

Ms. Bunting testified about the frequency with which Child has been moved to different homes and cared for by different people. From his birth, Child was with one or both parents until April 2009. At that time Child was removed from Mother's care and placed with his paternal grandfather's paramour. (N.T. 9/18/15, p. 11). Child again lived with Mother until September 2009, and thereafter he lived with his maternal grandfather. (N.T. 9/18/15, pp. 11-12). Child lived periodically with that grandfather, and in fact lived with that grandfather's paramour for a substantial period of time, between October 1, 2009 and July 28, 2010, while grandfather travelled due to his employment as a truck driver. (N.T. 9/18/15, p. 13). Custody was then returned to Mother who had completed "a program" and had moved to a shelter. (N.T. 9/18/15, p. 13). Ms. Bunting testified that Mother tested positive for drugs within three (3) weeks of moving into the shelter, and Child was again removed from her care and custody and was placed with Father. (N.T. 9/18/15, p. 13). Ms. Bunting testified from her review of the file that it was unknown how long Child was actually with Father. On August 2, 2012, it was reported that Mother had custody of Child. (N.T. 9/18/15, p. 14).

Ms. Bunting then testified that it was during the summer of 2013 that Mother moved to Pennsylvania and lived with Child until he came into the care of the Agency in March of 2014. The Agency became involved following two (2) referrals indicating that there were drugs in the home, that Mother was continuing to abuse heroin, crack and prescription drugs, and that Child was being neglected. (N.T. 9/18/15, pp. 14-15). When the Agency went to the home to assess

---

[3] Father testified about that incident as follows:

"...I actually had never—never had any drug problems or anything or ever failed these drug tests or anything. Zero for drugs. Nothing to do with drugs in Maine. We did get pulled over in a car and Mother "was written up by the police for having possession of some drug paraphernalia, and I eventually ended up going to jail for 90 days for it. The Judge said, 'that's very chivalrous of you [Father], to fall on your sword for [Mother].' But at that time [Child] was a baby and needed his mother, and so I did."

(N.T. 9/18/15, p. 48)

5

ROW/OC SCANNED DEC 4 2015

conditions there following the referrals, Mother refused two (2) drug tests. All of this prompted the Agency to request an emergency order. Child was placed in care on March 14, 2014 and he was adjudicated dependent on April 3, 2014. (N.T. 9/18/15, pp. 14-15).

### B. Agency's Permanency Placement Plan Objectives for Mother Remain Unmet

The Agency developed a permanency placement plan which included the objectives Mother needed to achieve to be reunited with Child. Those objectives included participating in drug and alcohol treatment, maintaining sobriety, obtaining necessary prescription medications for mental health issues, obtaining housing, and being able to financially support herself and Child. (N.T. 9/18/15, pp. 15-17). Ms. Bunting testified that she spoke with Mother ten (10) or fifteen (15) times about what goals she needed to achieve to avoid a termination of her parental rights. (N.T. 9/18/15, p. 24).

Ms. Bunting testified that in several meetings which included her own supervisor and Mother's attorney, she discussed with Mother the Agency's expectations as they related to Mother's substance abuse. These issues were reiterated to Mother by her probation officer. (N.T. 9/18/15, p. 17). Mother appeared to understand the expectations, and committed to addressing these issues. Unfortunately, mother never followed through with any treatment. (N.T. 9/18/15, p. 18). As of the time of the termination hearings in September, 2015, there were three (3) active bench warrants in Bucks County seeking Mother's arrest. (N.T. 9/18/15, p. 24).

### i.    Mother's Mental Health Issues Remain Untreated

Ms. Bunting testified that she discussed mental health issues with Mother, who had told Ms. Bunting that she suffered from posttraumatic stress disorder, along with anxiety and depression. Mother told Ms. Bunting that she had taken prescription medications for these issues during most of her adult life, but was no longer taking these medications. (N.T. 9/18/15, p. 18). Ms. Bunting stated that Mother reported that while living in Maine several years earlier, she had completed a program called Stepping Stones, and she had treated with a therapist. That therapist confirmed to the Agency that she treated Mother in Maine, approximately three (3) years earlier.

6

(N.T. 9/18/15, p. 37). Ms. Bunting noted that Mother stated she had not sought mental health assistance since moving to Pennsylvania. (N.T. 9/18/15, pp. 18-19). Ms. Bunting testified that the Agency had provided Mother with leads for third-party services that could assist her in addressing her mental health needs. The Agency offered Mother transportation and insurance guidance for treatment at Penndel Mental Health and Aldi Foundation so she could receive and benefit from their services. (N.T. 9/18/15, pp. 24-25). In April of 2015 Mother attended Penndel for a mental health evaluation; however the assessment did not occur due to a lack of insurance. (N.T. 9/18/15, pp. 36, 41). Ms. Bunting testified that in recent months Mother has not been interested in contact with the Agency, and that as recently as August 2015, Mother ran away from Ms. Bunting at one of Mother's visits with Child when the social worker tried to initiate a dialogue about providing insurance coverage for mental health treatment. (N.T. 9/18/15, pp. 24-25).

### ii. Mother's Housing and Income are Inadequate to Provide for Child

Ms. Bunting testified that Mother explained that she lost her Section 8 eligibility due to inability to pay Two Thousand Three Hundred Dollars ($2,300.00) which she owed in rent. (N.T. 9/18/15, p. 19). Mother reported to Ms. Bunting that she had been living with a friend, Mr. Peters. (N.T. 9/18/15, p. 19). Mother informed Ms. Bunting that she worked for Mr. Peters in exchange for a place to live, however she never provided the Agency a formal pay stub, written agreement, or lease. Ms. Bunting did not believe that Mother was presently working, nor was Ms. Bunting aware of where Mother is presently living. (N.T. 9/18/15, p. 21).

### C. Mother Failed to Appear at the First Hearing on September 18, 2015

Mother was notably absent at the hearing on September 18, 2015. The record is clear that Mother was personally served by an Agency caseworker with notice of the hearing a sufficient time prior to September 18th. Additionally, Ms. Bunting testified that the Agency confirmed with Mother's attorney, just one (1) day prior, that Mother was aware of the hearing and expected to attend. (N.T. 9/18/15, pp. 5-6). During the September 18th hearing, at approximately 12:35 p.m., Mother's counsel informed the Court that she had just received notification from her office that

7

ROW/OC SCANNED DEC 4 2015

OW/OC SCANNED DEC 4 2015

Mother had contacted the office and stated she experienced transportation difficulties that morning, and was attempting to travel to the Courthouse. (N.T. 9/18/15, pp. 33, 63). Counsel surmised that Mother did not have a working telephone of her own, so counsel had no means by which to contact Mother. (N.T. 9/18/15, p. 44). Mother's counsel then sought a continuance of the hearing while the Court was in the midst of receiving Ms. Bunting's testimony. (N.T. 9/18/15, p. 33). While we proceeded to hear additional testimony that day, we ruled that despite Mother's apparent irresponsibility in not attending Court on that date, given the magnitude and finality, absent appeal, of a decision to terminate parental rights, we would arrange for another hearing date to afford Mother an opportunity to be heard. (N.T. 9/18/15, p. 35)

### D. Mother Failed to Appear at the Second Hearing on September 22, 2015

When this matter reconvened on September 22, 2015, Mother again failed to appear. Counsel for Mother represented that Mother never ultimately arrived at the Courthouse on September 18, 2015. Counsel stated that she spoke with Mother by telephone on September 19, 2015 and personally informed her of the September 22, 2015 hearing date. At that time, Mother indicated to her counsel that she would be present on the 22nd. (N.T. 9/22/15, pp. 2-3)

However, on the morning of September 22, 2015, prior to commencement of the hearing, Counsel represented to the Court that Mother had informed her office earlier that morning that she was on route to a hospital. That information could be not confirmed. (N.T. 9/22/15, pp. 2-3). Mother had offered counsel no explanation as to why she was going to the hospital. (N.T. 9/22/15, p. 3). Communication with Lower Bucks Hospital, the hospital in most reasonable proximity to Mother's last known residence, revealed that Mother was not a patient. (N.T. 9/22/15, pp. 3-4).

### E. Termination of Mother's Parental Rights Pursuant to §2511(a)

We were concerned that Mother perhaps did not appreciate the significance and finality of the relief sought by the Agency at the termination hearing. Accordingly, we gave Mother two (2) opportunities to testify, of which she failed to avail herself. Based on the evidence and

8

testimony provided, and in conformity with the pertinent statutory law, we found that Child has lacked proper parental care and control necessary for his well-being per §2511(a)(2). We found further that Mother has not, cannot, and will not remedy those conditions within a reasonable time period.

The Agency was also able to prove clearly and convincingly, pursuant to §2511(a)(5), that Child has been in the care of the Agency for six (6) months or more, that the reasons for such placement continue to exist, and that those reasons are not likely to be remedied within a reasonable time.

Finally, pursuant to §2511(a)(8), the Agency met its burden of proving that Child has been in care for at least twelve (12) months, placement with the Agency having commenced on March 14, 2014, and that the unfortunate conditions which initially led to removal of Child continue to exist.[4]

### F.  Termination of Mother's Parental Rights Pursuant to §2511(b)

As the Agency clearly and convincingly established the criteria set forth by 23 Pa.C.S. §2511(a),(2),(5), and (8) for termination[5], we next examined, pursuant to §2511(b), whether the termination of Mother's parental rights served the best interests of Child, considering his developmental, physical, and emotional needs and welfare. We found that it did so.

Child has been placed with his foster family since March 2014. (N.T. 9/18/15, pp. 30-31). Ms. Bunting testified that she visits with Child and the foster family on a monthly basis. (N.T. 9/18/15, p. 31) He is active in sports activities and has adjusted well socially, as he has many friends. Academically, his reading and math skills are improving. There is a twelve (12) year old daughter in the foster home, and she and Child interact as siblings do. (N.T. 9/18/15, pp. 31-32). Ms. Bunting testified that the foster parents and Child have an affectionate relationship. The

---

[4] Pursuant to § (a) (8), the Agency need not prove that the conditions cannot be remedied within a reasonable period of time.

[5] We reiterate that the Superior Court need only agree with the trial court's decision as to any one subsection of §2511, in order to affirm termination of parental rights. In re M.M., supra.

9

ROW/OC SCANNED DEC 4 2015

household functions with appropriate guidelines, boundaries and expectations. (N.T. 9/18/15, p. 31). The foster parents have expressed an interest in adopting Child, (N.T. 9/18/15, pp. 32-33) and Child has expressed a desire to be adopted by the foster family. (N.T. 9/18/15, p. 41). The foster family is amenable to continuing contact between Mother and Child. (N.T. 9/18/15, p. 38). We found the record of Child's substantial bond with the foster family to be clear and convincing.

When considering what situation would best serve a child's needs and welfare, the trial court must examine the status of the natural parental bond and whether terminating the natural parents' rights would destroy something in existence that is necessary and beneficial to the child.

> When conducting a bonding analysis, the court is not required to use expert testimony. ..Social workers and caseworkers can offer evaluations as well... Additionally, Section 2511(b) does not require a formal bonding evaluation... "Above all else ... adequate consideration must be given to the needs and welfare of the child."... A parent's own feelings of love and affection for a child, alone, do not prevent termination of parental rights. ..
>
> Before granting a petition to terminate parental rights, it is imperative that a trial court carefully consider the *intangible* dimension of the needs and welfare of a child—the love, comfort, security, and closeness—entailed in a parent-child relationship, as well as the tangible dimension. Continuity of relationships is also important to a child, for whom severance of close parental ties is usually extremely painful. The trial court, in considering what situation would best serve the child[ren]'s needs and welfare, must examine the status of the natural parental bond to consider whether terminating the natural parents' rights would destroy something in existence that is necessary and beneficial.

In re Z.P., supra. at 1121 (internal citations omitted)

We found termination was warranted here. Perhaps in part due to Mother's failure to appear at the hearings, the second of which was scheduled solely to afford Mother another opportunity to testify, the record is devoid of any persuasive testimony or evidence of a beneficial relationship between Mother and Child, the existence of which would result in a negative effect on Child should Mother's rights be terminated. The record contains clear and convincing evidence that Mother has not made strides toward adequately parenting Child. The evidence suggests that Mother often failed to pursue the avenues that were open to her for assistance through the

10

ROW/OC SCANNED DEC 4 2015

Agency. In re: Adoption of R.J.S., 901 a.2D 502 (Pa. Super. 2006). Child is deserving of consistent affection and attention to his needs and welfare, along with permanence and stability.

## VI. CONCLUSION

For all of the reasons noted above, we respectfully submit that our Decree of September 22, 2015, granting the Agency's Petition to Involuntarily Terminate Mother's Parental Rights as to Child, should be affirmed.

BY THE COURT:

GARY B. GILMAN, J.

12/2/15
Date

N.B. It is your responsibility
to notify all interested parties
of the above action.

11